# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN GARAVAGLIA, | CASE NO. 1:14-cv-02464-SHR-GBC |
| Plaintiff, | |
| v. | (JUDGE RAMBO) |
| | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | Docs. 1, 5, 6, 10, 15, 16 |

## REPORT AND RECOMMENDATION

### I.     Procedural Background

On December 20, 2011, Kathleen Garavaglia ("Plaintiff") filed as a claimant for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, with a date last insured of December 31, 2009,[1] and claimed a disability onset date of October 31, 2007. (Administrative Transcript (hereinafter, "Tr."), 14).

After the claim was denied at the initial level of administrative review, the

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. 42 U.S.C. §§ 415(a) and 416(i)(1). The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." *See* 42 U.S.C. § 416(i)(2); *accord Renfer v. Colvin*, No. 3:14CV611, 2015 WL 2344959, at *1 (M.D. Pa. May 14, 2015).

Administrative Law Judge (ALJ) held a hearing on August 13, 2013. (Tr. 43-62). On September 4, 2013, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. 11-26). Plaintiff sought review of the unfavorable decision which the Appeals Council denied on November 17, 2014, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-4).

On December 26, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits. (Doc. 1). On March 9, 2015, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings. (Doc. 5, 6). On May 4, 2015, Plaintiff filed a brief in support of the appeal. (Doc. 10 ("Pl. Brief")). On June 29, 2015, the Court referred this case to the undersigned Magistrate Judge. On July 15, 2015, Defendant filed a brief in response. (Doc. 15 ("Def. Brief")). On July 17, 2015, Plaintiff submitted a letter indicating that a reply brief would not be filed. (Doc. 16).

**II. Relevant Facts in the Record**

Plaintiff was born January 30, 1968, and thus was classified by the regulations as a younger person through the date of last insured, December 31,

2009. (Tr. 24); 20 C.F.R. § 404.1563(c). Plaintiff completed the twelfth grade and previously worked as a bank teller. (Tr. 123, 152, 158). Plaintiff alleged disability as of October 31, 2007 due to impairments including neck surgery, sciatica, bulging discs in lower back, arthritis in lower back, scoliosis, anxiety, and migraine headaches. (Tr. 122). Plaintiff had history of treatment for pain in her neck and low back. (Tr. 211, 448-57, 508, 547).

### A. Relevant Treatment History and Medical Opinions

### 1. Bon Secours Community Hospital

In September 2007, Plaintiff was treated in the emergency room (ER) for complaints of neck and low back pain. (Tr. 166-80). She was initially prescribed Percocet, and later prescribed Motrin and a muscle relaxant for treatment. (Tr. 173, 180). An MRI was performed on September 8, 2008, which showed a mild disc bulge with a small posterior disc protrusion and facet hypertrophy resulting in mild central canal stenosis with mild right and moderate left neuroforaminal stenosis. (Tr. 274). An MRI was performed on December 23, 2008 of her cervical spine, which showed broad-based central right paracentral disc protrusion producing mild central canal stenosis and impingement upon the right neural foramen. (Tr. at 276).

Plaintiff underwent an MRI of her lumbar spine in September 2008. (Tr. 274). It showed mild degenerative changes at L5-Sl consistent with mild central canal stenosis with mild right and moderate left neural foraminal stenosis. (Tr. 274). Plaintiff also had an MRI of her cervical spine in December 2008. (Tr. 276). It showed a disc herniation at C5-6. (Tr. 276). Nine months later, Plaintiff had another MRI of her cervical spine in September 2009 that showed decreased prominence of the C5-6 disc herniation with decreased central canal narrowing and no significant foraminal stenosis. (Tr. 280). An MRI of Plaintiff's lumbar spine, also September 2009, showed no significant changes in degenerative disc disease at L5-S1. (Tr. 282).

### 2. Andover Orthopedic Surgery & Sports: Robert C. Weinschenk, Orthopedic Surgeon

Plaintiff began treating with Andover Orthopaedics Surgery & Sports Medicine in 2004 with complaints of low back pain. (Tr. 447). In June 2008, Dr. Weinschenk reported that Plaintiff ambulated with a slow, but steady gait pattern. (Tr. 498). Plaintiff had tenderness throughout the thoracolumbar spine, most evident in the lower lumbar region as well as the left and right SI joint. (Tr. 498). Her range of motion was also limited in her lumbar spine with increased radiating pain to her right lower extremity and positive straight leg raising on the right side

at 60 degrees. (Tr. 498). Plaintiff's neurological examination was normal, revealing symmetric reflexes with no obvious evidence of any sensory and/or motor deficits. (Tr. 458). Dr. Weinschenk's impression was degenerative disc disease and degenerative disease of the posterior facets of the lumbar spine. (Tr. 458). He prescribed analgesics, muscle relaxants, and nonsteroidal anti-inflammatory drugs for treatment, as well as a lumbar epidural steroid injection, for which he referred Plaintiff to Dr. Subhedar. (Tr. 458-463).

### 3. Good Samaritan Hospital: Dilip Subhedar, M.D.

Plaintiff began treating with a pain management specialist, Dr. Subhedar, in October of 2008 and received epidural steroid injections on January 16, 2009. (Tr. 295-305). Dr. Subhedar administered two lumbar epidural steroid injections and two lumbar facet joint blocks in 2008 and 2009, as well as one cervical epidural steroid injection in January 2009 with temporary relief. (Tr. 215-27, 302). In examinations in October 2008 and April 2009, Dr. Subhedar reported that Plaintiff's gait was normal. (Tr. 212, 548). She could toe walk, heel walk, and do a deep knee bend. (Tr. 212, 548). Her upper extremities were neurologically intact. (Tr. 212, 548). Her lumbar spine range of motion was full with no paravertebral muscle spasms or boney tenderness. (Tr. 212, 548). Her thoracic spine had no tenderness. (Tr. 212, 548). Her bilateral lower extremities showed

straight leg raising to be bilaterally symmetrical. (Tr. 548). She had no sensory or motor deficits and her deep tendon reflexes were 2+ bilaterally symmetrical. (Tr. 212, 548).

In February 2009, Dr. Subhedar noted that Plaintiff complained of radicular pain after returning from a recent vacation. (Tr. 219, 647). Plaintiff had gone to St. Lucia in January 2009. (Tr. 245). In April 2009, Plaintiff told Dr. Subhedar that she was a homemaker and taking "fulltime care of her ailing mother." (Tr. 212). In August 2009, Dr. Subhedar referred Plaintiff to Dr. Degen for evaluation of her ongoing complaints of low back and neck pain. (Tr. 508).

### 4. Primary Care Physician: Richard J. Daboul Jr., M.D.

Dr. Daboul treated Plaintiff since September 2002, for various impairments including fatigue and malaise, gastroesophageal reflux disease (GERD), subacromial bursitis, and migraine headaches. (Tr. 560-882). On most physical examinations from the October 2007 onset date through December 2009, no significant abnormal findings were reported other than Plaintiff occasionally appearing uncomfortable due to pain and some limited movement of her right shoulder. (Tr. 630-66). Examinations with Dr. Daboul generally showed that Plaintiff was in no acute distress and had normal extremities and neurological signs, including normal sensation, normal reflexes, normal gait, and 5/5 motor

strength in Plaintiff's upper and lower extremities.  (Tr. 632, 636, 638, 644, 650, 658, 660, 662, 664).

For pain relief, Dr. Daboul prescribed Vicodin, which he later switched to Norco, as needed.  (Tr. 630-66).  In December 2009, the month that Plaintiff's insured status expired, her general appearance was uncomfortable due to pain and she had bilateral paraspinal muscle spasms and tenderness in her back and limited right shoulder range of motion.  (Tr. 630).  The remainder of her examination was normal.  (Tr. 630).

### 5.  Hudson Valley Neurosurgical Associates: Jeffrey W. Degen, M.D.

During examinations in August and October 2009, Dr. Degen noted that Plaintiff had full strength, except for her proximal lower extremities at 4/5, where she was limited by pain.  (Tr. 498, 508).  She also had a positive Hoffman's sign on the right and absent reflexes in her left biceps, but otherwise had 2+ deep tendon reflexes.  (Tr. 508).  On October 28, 2009, Dr. Degen stated that the disc herniation at Plaintiff's C5-6 level and degenerative disease at L5-S1 level were potentially causing her symptomatology.  (Tr. 498, 550).  Dr. Degen recommended two separate surgeries in order to address the Plaintiff's cervical and lumbar issues.  (Tr. 550).  In November 2009, Dr. Degen performed a C5-6 discectomy and fusion with allograft and instrumentation.  (Tr. 314-18, 495-97).  In a treatment record

dated December 23, 2009, Dr. Degen noted that Plaintiff initially had "excellent relief of her pain following the surgery" however, a few days after her surgery, she fell on her left shoulder. (Tr. 494). Dr. Degen noted that since the fall her left shoulder and extremity pain had flared up but had since "completely resolved." (Tr. 494). Plaintiff reported experiencing severe neck pain which Dr. Degen stated was "likely from a combination of the surgery, the fall, and her life stressors." (Tr. 494).

In subsequent examinations through the first few months of 2010, Plaintiff continued to complain of neck pain that radiated into her left shoulder. (Tr. 489, 492, 494). Dr. Degen noted that Plaintiff had good strength throughout. (Tr. 492). He also noted that the an updated of MRI scan of Plaintiff's cervical spine in February 2010 demonstrated an excellent decompression at C5-6 and that the images clearly showed that the spinal cord was no longer compromised. (Tr. 489-90). Dr. Degen recommended physical therapy, which Plaintiff underwent between March 2010 and June 2010. (Tr. 343). In July 2010, Dr. Degen noted that Plaintiff was "going away to Aruba on August 8th." (Tr. 486). Plaintiff continued ongoing care for complaints of neck and low back pain, as well as shoulder pain, through 2012. (Tr. 201, 475-76, 513-45).

### 6. State Agency Medical Consultant Opinion: Kurt Maas, M.D.

On June 27, 2012, Dr. Maas, a State agency medical consultant, reviewed the record at the initial level and opined that Plaintiff was capable of performing full range of light work (without climbing of ladders, ropes, or scaffolds, or crawling). (Tr. 68-69).

### III. Review of ALJ Decision

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995)), and may be less than a preponderance. *Jones*, 364 F.3d at 503. If a reasonable mind might accept the relevant evidence as adequate to support a conclusion reached by the

Commissioner, then the Commissioner's determination is supported by substantial evidence. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A). A claimant for disability benefits must show that he or she has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. 20 C.F.R. § 404.1520; *accord Plummer*, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. 20 C.F.R. §

404.1520(a)(4). The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Id.* The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A. Step Five

Plaintiff argues that "[t]his case is essentially a step 5 case in which the Plaintiff is arguing that she satisfied her burden of proof by establishing, by the

substantial evidence of record, that she is incapable of sustaining substantial gainful activity." Pl. Brief at 10. As an initial matter, Plaintiff mischaracterizes the burden at step five. As stated above, if the claimant satisfies the burden at steps one through four, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993). However, the ultimate burden of proving disability within the meaning of the Act still lies with the plaintiff. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

Specifically, Plaintiff argues that by the ALJ determining that the evidence supported that Plaintiff was capable of sedentary work with a sit/stand option to alternate positions between sitting and standing every 10 minutes, that this:

> level of distraction brought on by pain and/or discomfort would likely create significant time off task, upwards of ten (10) percent of a given workday would be spent adjusting positions between sitting and standing, it would be highly probable that an additional five (5) percent off task can be expected precluding her from competitive employment.

Pl. Brief at 10. As a part of the hypothetical posed the Vocational Expert (VE), the ALJ stated:

> I want you to assume that the hypothetical claimant, in order to sustain a full workday, is going to need some degree of a sit/stand

> type of flexibility. All right. And most of the time would be in primarily a seated position, but let's assume that if she's afforded a sit/stand type of flexibility, she could sit for approximately up to six hours cumulatively during any given workday; be on her feet standing for approximately two hours with this sit/stand flexibility. Now, in terms of how often the claimant would have to change positions it could vary day in and day out and, you know, there may be some days where she would have to have this flexibility sometimes as often as perhaps 10 minutes, every 10 minutes as needed, but other times she may be able to do it for a little longer, a little shorter. . . . I gave you the cumulative time but there may be days when she is switching her position more frequently so the timing may be somewhere on an even split of a total of four hours each. So it could vary. So essentially the sit/stand flexibility would have to be pretty much self-driven depending on the day.

(Tr. 57-58). After the VE asked for clarification, the ALJ responded, "theoretically if she's switching position every 10 minutes to accommodate a full eight hour workday, theoretically half the time she would be sitting four hours and half the time she would be standing four hours." (Tr. 58). The VE testified:

> Within those parameters, I'm looking at the northeastern Pennsylvania region. I'd first like to offer a surveillance monitor, sedentary, unskilled, SVP: 2; 100 to 200. . . .I'm going to indicate an information clerk/receptionist. That's sedentary, semi-skilled, SVP: 4; that's 1,700 to 1,800. And I'm going to indicate a telephone solicitor, sedentary, semi-skilled, SVP: 3; 700 to 800. . . . [the DOT numbers are] Surveillance monitor, 379.367-010; information clerk/receptionist is 237.367-022; telephone solicitor is 299.357-014.

(Tr. 59). In response to the ALJ's question of whether the numbers of jobs reflect the "sit/stand type of option," the VE responded that "the numbers I'm giving are

the numbers that I'm indicating, in my opinion, in my research, exist in the regional economy. These are jobs in my opinion that can be performed with the sit/stand option." (Tr. 59-60). When asked whether the VE's testimony was "consistent with the Dictionary of Occupational Titles and its related companion publications" the VE responded that "[i]n general it is, except the caveat that sit/stand option is not indicated in any definition in the DOT. That's based off of my work experience in the field and seeing how jobs are and can be performed." (Tr. 60). When asked if Plaintiff's attorney wanted to ask any questions of the VE, Plaintiff's attorney declined. (Tr. 61).

At step five, it is the Commissioner's burden to prove that there are jobs in the national economy that the Plaintiff can perform, given the impairments accepted by the ALJ. *See Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000). If work a claimant can do "exists in the national economy"—that is, if "there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his] physical or mental abilities and vocational qualifications"—the claimant will not be considered disabled. *See* 20 C.F.R. § 404.1566(b); *see also Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (holding that 200 jobs in regional economy "is a clear indication that there exists in the national economy other substantial gainful work which [claimant] can

perform."); *accord Russo v. Comm'r of Soc. Sec.*, No. CIV.A. 13-06918 FLW, 2014 WL 6991987, at *11 (D.N.J. Dec. 10, 2014).

In this instance the VE's testimony constitutes substantial evidence in the record to support the ALJ's analysis. *See Sanborn v. Colvin*, No. 13–224, 2014 WL 3900878, at *18 (E.D. Pa. Aug. 11, 2014); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (holding that the testimony of a VE constitutes substantial evidence for purposes of judicial review where the hypothetical questioning of the ALJ fairly encompasses an individual's significant limitations that are supported by the record); *see also Plummer*, 186 F.3d at 431; *Sanborn v. Colvin*, No. 13–224, 2014 WL 3900878, at *18 (E.D. Pa. Aug.11, 2014).

The Court observes that claimants' attorneys or administrative law judges in other cases have specified in the hypothetical whether the transferring between sitting and standing would affect a claimant's ability to remain on task. *See e.g.*, *Stugart v. Comm'r of Soc. Sec.*, No. 3:14-CV-1291, 2015 WL 685332, at *5 (M.D. Pa. Feb. 18, 2015) (quoting an ALJ hypothetical that the claimant "would require a sit/stand option at will but would not be off task with transferring"); *Morris v. Colvin*, 21 F. Supp. 3d 360, 368 (D. Del. 2014) (example of claimant's attorney posing a hypothetical to ALJ where the sit/stand option entailed taking an off task break for ten minutes); *Holmes v. Astrue*, No. CIV.A. 08-545, 2009 WL 688914, at

*5 (W.D. Pa. Mar. 12, 2009) (quoting an ALJ hypothetical that the claimant had "the ability to sit or stand every 15 to 20 minutes, and with the ability to be off tasks up to 10 percent of the work period). However, the omission of specifying that the sit/stand option would make Plaintiff off task does not require reversal in this instance, given that Plaintiff is merely speculating that the sit/stand option would entail being off task up to fifteen percent of the workday without directing the Court to any evidence to contradict the VE testimony that the sit/stand option is compatible with the stated jobs of surveillance monitor, information clerk/receptionist and a telephone solicitor.

It is reasonable for the ALJ to assume that the ability to sit and stand at will entails a degree of distraction already contemplated by the regulations and is encompassed by the VE testimony. As recognized in Social Security Ruling 96-9p, "the occupational base for a full range of unskilled sedentary work will be eroded" in cases where an "individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically." SSR 96-9p. Such situations, however, do not mandate a finding of "disabled." Rather, the Administration recommends that the ALJ "consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." SSR 96-9p; *see also* SSR 83-12 ("In cases of unusual limitation of ability to sit or

stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base."); *accord Fickes v. Colvin*, No. CIV.A. 3:13-288, 2014 WL 4384608, at *3-4 (W.D. Pa. Sept. 4, 2014). Social Security Regulation ("SSR") 00-4p specifically notes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p.

The court in *Minichino v. Colvin*, observed that in response to the hypothetical including a limitation of being able to sit and stand at will, the VE explained that the overall numbers of available jobs would be eroded by about fifty percent and the ALJ did not err in relying on the VE's "knowledge, experience, and observations" as well as the VE's reduction in the number of positions based on the "conflict" of the DOT not addressing a sit/stand at will limitation. *See Minichino v. Colvin*, 955 F.Supp.2d 366, 380-81 (M.D. Pa. 2013). In this instance, the ALJ specifically inquired about the ability to sit and stand at will and the VE provided testimony regarding his expertise and observing work conditions, in addition to knowledge of the DOT. (Tr. 57-60). The ALJ reasonably relied of the VE testimony regarding the jobs available with the sit/stand option especially given that the VE testified that his testimony stems his "work experience in the field and seeing how jobs are and can be performed." (Tr. 60). Plaintiff fails to explain to what degree a sit/stand option entails a certain level of permissible

interruption; explain how Plaintiff's impairments would entail more interruption than what is inherent to being able to alternate sitting and standing at will; cite any evidence or expert testimony to support the assertion that Plaintiff would be off-task up to fifteen percent during the work day; and, when given the opportunity, Plaintiff's attorney did not cross-examine the VE. (Tr. 61).

The Court finds that the ALJ did not err in omitting from the hypothetical that Plaintiff would be off task for fifteen percent of the workday and substantial evidence supports the VE's identification of surveillance monitor, information clerk/receptionist and a telephone solicitor as jobs that Plaintiff was capable of performing.

### IV. Recommendation

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate.

Accordingly, it is HEREBY RECOMMENDED:

I.     This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: November 9, 2015                      s/Gerald B. Cohn
                                           GERALD B. COHN
                                     UNITED STATES MAGISTRATE JUDGE